1

Claire Tonry, WSBA No. 44497
Evelyn Mailander, WSBA No. 62827
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TWIN HARBORS WATERKEEPER, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) COMPLAINT |
| CRESLINE-NORTHWEST, LLC, | ) |
| Defendant. | ) |
| _____ | ) |

## I.    INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Twin Harbors Waterkeeper ("Waterkeeper"), seeks declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorneys' and expert witnesses' fees, for Defendant Cresline-Northwest, LLC's ("Cresline"), repeated and ongoing violations of pretreatment standards under Section 307 of the CWA, 33 U.S.C. § 1317, including the standards contained in the pretreatment permit regulating discharges of pollutants from Cresline's facility in Chehalis, Washington to the Chehalis

COMPLAINT - 1

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1  Regional Water Reclamation Facility ("Chehalis POTW"), which in turn discharges to the

2  Chehalis River.

3                    **II.    JURISDICTION AND VENUE**

4          2.      The Court has subject matter jurisdiction over Waterkeeper's claims under

5  Section 505(a) of the CWA, 33 U.S.C. § 1365(a). Sections 309(d) and 505(a) and (d) of the

6  CWA, 33 U.S.C. §§ 1319(d) and 1365(a) and (d), authorize the relief Waterkeeper requests.

7          3.      Under Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A),

8  Waterkeeper notified Cresline of its violations of the CWA and of Waterkeeper's intent to sue

9  under the CWA by letter dated and postmarked February 19, 2025 ("Notice Letter"). A copy of

10  the Notice Letter is attached to this complaint as Exhibit 1. The allegations in sections I through

11  VII of the Notice Letter are incorporated herein by this reference. In accordance with section

12  505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Waterkeeper

13  notified the Administrator of the United States Environmental Protection Agency ("EPA"), the

14  Administrator of EPA Region 10, and the Director of the Washington Department of Ecology

15  ("Ecology") of its intent to sue Cresline by mailing copies of the Notice Letter to these

16  individuals on February 19, 2025.

17          4.      At the time of the filing of this Complaint, more than sixty days have passed since

18  the Notice Letter and copies thereof were issued in the manner described in the preceding

19  paragraph.

20          5.      The violations complained of in the Notice Letter are continuing and/or are

21  reasonably likely to re-occur.

22

23

24

COMPLAINT - 2

6.      At the time of the filing of this Complaint, neither the EPA nor Ecology has commenced any action constituting diligent prosecution to redress the violations alleged in the Notice Letter.

7.      The source of the violations complained of is in Lewis County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), and 28 U.S.C. § 1391(b).

### III.     PARTIES

8.      Waterkeeper is suing on behalf of itself and its members.

9.      Waterkeeper is a non-profit corporation organized under the laws of the state of Washington. Waterkeeper is dedicated to protecting and preserving the environment of Washington State, especially the quality of its waters. Waterkeeper is a membership organization and has at least one member who is injured by Cresline's violations.

10.     Waterkeeper has representational standing to bring this action. Waterkeeper's members are reasonably concerned about the effects of excess discharges of oxygen-demanding substances and carcinogenic substances and other pollutants from Cresline's facility, on water quality and aquatic species and wildlife that Waterkeeper's members observe, study, use, and enjoy. Waterkeeper's members are further concerned about the effects of discharges from Cresline's facility on the Chehalis POTW's ability to collect, contain, and treat wastewater. In addition, discharges of wastewater containing excess oxygen-demanding substances and other pollutants from Cresline's facility lessen Waterkeeper's members' aesthetic enjoyment of nearby areas. Waterkeeper has members who live, work, fish, and recreate around the Chehalis River, who are affected by Cresline's discharges. Waterkeeper's members' concerns about the effects

COMPLAINT - 3

of Cresline's discharges are aggravated by Cresline's failure to record and report information about its discharges and pollution controls in a timely manner. The recreational, scientific, economic, aesthetic, and/or health interests of Waterkeeper and its members have been, are being, and will be adversely affected by Cresline's violations of the CWA. The relief sought in this lawsuit can redress the injuries to these interests.

11.     Defendant Cresline-Northwest, LLC is a limited liability company authorized to conduct business under the laws of the state of Washington.

12.     Cresline operates an approximately 17.2-acre polyvinyl chloride ("PVC") pipe production facility, located at or about 223 Maurin Road, Chehalis, WA 98532 (referred to herein as the "facility").

## IV.    LEGAL BACKGROUND

13.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA. Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, a pretreatment standard promulgated pursuant to Section 307(b) of the CWA, 33 U.S.C. § 1317(b).

14.     The state of Washington has established a federally approved state National Pollutant Discharge Elimination System and pretreatment program administered by Ecology. Wash. Rev. Code § 90.48.260; Wash. Admin. Code chs. 173-220, -216. This program was approved by the Administrator of the EPA pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b). *See also* 40 C.F.R. §§ 403.8, 403.10.

15.     Section 307 of the CWA, 33 U.S.C.§ 1317, regulates indirect dischargers and prohibits the discharge of pollutants from indirect dischargers in violation of any effluent standard or prohibition or pretreatment standard. *See* 40 C.F.R. § 403.3(i) ("The term *Indirect*

COMPLAINT - 4

*Discharge* or *Discharge* means the introduction of pollutants into a [publicly owned treatment works] from any non-domestic source regulated under section 307(b), (c), or (d) of the [CWA].")
(emphasis in original).

16.     In Washington State, Ecology is designated as the state agency with authority delegated by the federal government over administering pretreatment requirements. RCW 90.48.260. Washington State's pretreatment program is enumerated in WAC 173-216. Some municipalities have been delegated authority to issue permits for discharges into their sewer systems under WAC 173-216-150, while others, including the City of Chehalis, have not been. Ecology has therefore set certain pretreatment standards for industrial indirect dischargers, including those set forth in Cresline's pretreatment permit.

## V.     FACTS

17.     Pursuant to Section 307(b) of the CWA, § 1317(b), Ecology has repeatedly issued Cresline pretreatment permit number ST0006076 (the "Pretreatment Permit" or "Wastewater Permit"), including most recently on December 8, 2021, which became effective January 1, 2022 and expires on December 31, 2026 ("2022 Pretreatment Permit"). The Pretreatment Permit authorizes Cresline to discharge process wastewater and other pollutants to the Chehalis POTW subject to certain terms and conditions. The previous iteration of the Pretreatment Permit, effective June 1, 2016 and expired on May 31, 2021 ("2016 Pretreatment Permit"), contained substantially similar terms and conditions.

18. The Pretreatment Permit contains pretreatment standards including numeric effluent limitations, monitoring and sampling of discharges, and reporting and recordkeeping requirements. The Pretreatment Permit requires, among other things, that Cresline properly operate and maintain all systems of treatment and control at all times. The Pretreatment Permit

COMPLAINT - 5

prohibits Cresline from introducing pollutants into the Chehalis POTW that cause pollutants to pass-through the treatment system or interfere with treatment operations.

19.    Cresline's facility is engaged in industrial activities and is approximately 17.2 acres, which consists of several buildings surrounded by an impervious asphalt parking lot to the south and an outdoor product storage area to the east, and bordered by a rail line to the west, including a rail receiving area. Cresline's facility discharges process wastewater to the Chehalis POTW, which discharges to the Chehalis River.

20.    The vicinity of the facility, the Chehalis POTW, and the receiving waters are used by the citizens of Washington and visitors, as well as at least one of Waterkeeper's members, for recreational activities, including fishing, swimming, and walking. Waterkeeper's member(s) also derive(s) aesthetic benefits from the receiving waters. Waterkeeper and its members' enjoyment of these activities and waters is diminished by the polluted state of the Chehalis River and by Cresline's contributions to such polluted state.

21.    Cresline has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), by violating pretreatment standards under Section 307 of the CWA, 33 U.S.C. § 1317. These violations are reasonably likely to recur.

22.    Cresline violated pretreatment standards by discharging in excess of the Pretreatment Permit's five-day biochemical oxygen demand ($BOD_5$) limit of 300 mg/L per day during the monitoring periods identified in Table 1, violations that are reasonably likely to recur:

**Table 1: $BOD_5$ Discharge Violations**

| Date of Violation | $BOD_5$ maximum daily discharge (effluent limit 300 mg/L) |
|---|---|
| February 25, 2022 | 490 mg/L |
| March 25, 2022 | 480 |
| April 29, 2022 | 480 |
| June 17, 2022 | 350 |
| July 29, 2022 | 400 |

COMPLAINT - 6

| April 26, 2023 | **315** |
|---|---|
| May 31, 2023 | **320** |
| April 25, 2024 | **460** |
| May 22, 2024 | **490** |
| July 25, 2024 | **330** |
| August 29, 2024 | **440** |
| February 20, 2025 | **328** |
| March 14, 2025 | **380** |

These requirements and Cresline's violations thereof are described in Section II of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference.

23.    40 C.F.R. § 403.5(c)-(d) incorporates local pretreatment limits as part of the pretreatment program, including those in Chehalis Municipal Code ("CMC") § 13.08.310(F), establishing the sample maximum daily concentration of 300 mg/L for $BOD_5$. Cresline has violated these limits in violation of Section 307 of the Clean Water Act each and every time it has discharged wastewater to the Chehalis POTW in excess of the limits, including those occasions identified in Table 1, above. These requirements and Cresline's violations thereof are described in Section II of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment violations are reasonably likely to recur.

24.    Cresline is in violation of the Pretreatment Permit's requirements to take several actions when Cresline violates or is unable to comply with a Pretreatment Permit condition, including each of the violations identified in Table 1. Cresline has not taken adequate action to stop, contain, and cleanup unauthorized discharges, including and as indicated by the discharges in excess of effluent limits identified in Table 1.

25.    Cresline has failed to contact the Department of Ecology by telephone within 24 hours and failed to submit a written report within five days of becoming aware of each violation identified in Table 1, as required by the Pretreatment Permit.  These requirements and Cresline's

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

violations thereof are described in Section III.a of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment violations are reasonably likely to recur.

26.     Cresline has failed to timely submit monthly discharge monitoring reports ("DMRs"), as required by the Pretreatment Permit.  These requirements and Cresline's violations thereof are described in Section III.b of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment violations are reasonably likely to recur.

27.     Cresline has failed to analyze its wastewater discharge a minimum of once per year for certain heavy metals and other pollutants. These requirements and Cresline's violations thereof are described in Section III.c of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment violations are reasonably likely to recur.

28.     Cresline has failed to properly operate its facilities to achieve compliance with the Pretreatment Permit's discharge limits, as required by the Pretreatment Permit. These requirements and Cresline's violations thereof are described in Section IV of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment violations are reasonably likely to recur.

29.     Cresline has failed to adequately develop, update, and maintain a Slug Discharge Control Plan to prevent adverse impacts of unauthorized discharges, such as the discharges in excess of effluent limits identified in Table 1, as required by the Pretreatment Permit and CMC § 18.08.310(N). These requirements and Cresline's violations thereof are described in Section V of

COMPLAINT - 8

the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment violations are reasonably likely to recur.

30.    Cresline has discharged pollutants at concentrations that cause pass-through at the Chehalis POTW. 40 C.F.R. § 403.5(a)(1) and Condition S5.B.3 of the Pretreatment Permit prohibit the pass-through of pollutants from Cresline through the Chehalis POTW. Cresline's discharges have violated this prohibition each and every time it has discharged wastewater containing bis(2-ethylhexyl)phthalate to the Chehalis POTW. These requirements and Cresline's violations thereof are described in Section VI of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment standard violations are reasonably likely to recur.

31.    Cresline is violating pretreatment standards by failing to apply All Known Available and Reasonable Methods of Prevention, Control, and Treatment (AKART) to its discharges, as required by RCW 90.48.010 and CMC § 13.08.010. These requirements and Cresline's violations thereof are described in Section VII of the Notice Letter, attached hereto as <u>Exhibit 1</u>, and are incorporated herein by this reference. These pretreatment standards violations are reasonably likely to recur.

32.    A significant penalty should be imposed against Cresline under the penalty factors set forth in 33 U.S.C. § 1319(d).

33.    Cresline's violations were avoidable had Cresline been diligent in overseeing facility operations and maintenance.

34.    Cresline benefited economically as a consequence of its violations and failure to implement improvements at the facility.

COMPLAINT - 9

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

35.     Cresline's violations caused and contributed to pollution in the water column and sediments of the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.     CAUSE OF ACTION

36.     The preceding paragraphs and the allegations in sections I through VII of the Notice Letter attached hereto as <u>Exhibit 1</u> are incorporated herein.

37.     Cresline has violated "effluent standards or limitations" under the CWA per 33 U.S.C. §§ 1365(a)(1) and (f)(7).

38.     No agency has taken an enforcement action constituting diligent prosecution or otherwise precluding claims under 33 U.S.C. §§ 1319 or 1365(a).

39.     Prior notice of violations and claims was provided to Cresline and others as required.

40.     Cresline's violations are ongoing or are reasonably likely to continue to occur. Any and all additional violations of pretreatment standards, including the Pretreatment Permit and local, state, and federal pretreatment standards, which occur after those described in Waterkeeper's Notice Letter, but before a final decision in this action, should be considered ongoing violations subject to this Complaint.

41.     Without the imposition of appropriate civil penalties and the issuance of an injunction, Cresline is likely to continue to violate pretreatment standards to the further injury of Waterkeeper, its members, and others.

## VII.     RELIEF REQUESTED

Wherefore, Waterkeeper respectfully requests that this Court grant the following relief:

COMPLAINT - 10

A.    Issue a declaratory judgment that Cresline has violated and continues to be in violation of the CWA;

B.    Enjoin Cresline from operating the facility in a manner that results in further violations of the CWA;

C.    Order Cresline to allow Waterkeeper to participate in the development and implementation of a plan to achieve compliance with applicable pretreatment standards;

D.    Order Cresline to provide Waterkeeper, for a period beginning on the date of the Court's Order and running for three years after Cresline achieves compliance with all applicable pretreatment standards, with copies of all reports and other documents which Cresline submits to Ecology regarding Cresline's compliance with such standards and coverage under the Pretreatment Permit at the time these documents are submitted;

E.    Order Cresline to take specific actions to remediate the environmental harm caused by its violations;

F.    Order Cresline to pay civil penalties of $68,445 per day of violation for each violation committed by Cresline, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. §§ 19 and 19.4;

G.    Award Waterkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

H.    Award such other relief as this Court deems appropriate.


RESPECTFULLY SUBMITTED this 28th day of April, 2025


## SMITH & LOWNEY PLLC

COMPLAINT - 11

Smith & Lowney PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

2    By:      By: *s/Claire Tonry*
         Claire Tonry, WSBA No. 44497
3         By: *s/Evelyn Mailander*
         Evelyn Mailander, WSBA No. 62827
4         Attorneys for Plaintiff
         2317 E. John St.,
5         Seattle, WA 98112
         Tel: (206) 860-2883
6         Fax: (206) 860-4187
         E-mail: claire@smithandlowney.com,
7         evelyn@smithandlowney.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT - 12

# EXHIBIT 1

# SMITH & LOWNEY
## —— PLLC ——
## ATTORNEYS AT LAW

February 19, 2025

**Via Certified Mail – Return Receipt Requested**

Managing Agent
Cresline Northwest, LLC
223 Maurin Rd.
Chehalis, WA 98532

Re:    **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT AND
REQUEST FOR STORMWATER POLLUTION PREVENTION PLAN**

Dear Managing Agent:

We represent Twin Harbors Waterkeeper ("Waterkeeper"), P.O. Box 201, Rochester, WA 98579, (360) 389-2979. Any response or correspondence related to this matter should be directed to us at the letterhead address (Smith & Lowney, PLLC, 2317 E John St., Seattle, WA 98112). This letter is to provide you with sixty days' notice of Waterkeeper's intent to file a citizen suit against Cresline Northwest, LLC ("Cresline") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described below. This letter is also a request for a copy of the complete and current stormwater pollution prevention plan ("SWPPP") required by Cresline's National Pollution Discharge Elimination System ("NPDES") permit for its Chehalis facility.

Cresline was granted coverage under Washington's State Wastewater Discharge Permit ("Pretreatment Permit") issued by the Washington Department of Ecology ("Ecology") effective February 18, 2003 and expired on June 30, 2005, under permit number ST0006076. Cresline has been covered under each successive iteration of the Pretreatment Permit, including the current Pretreatment Permit, issued by Ecology on January 1, 2022 and expiring on December 31, 2026, under the same permit number, ST0006076.

Cresline was granted coverage under Washington's Industrial Stormwater General Permit ("ISGP") issued by Ecology effective January 18, 2005 and expired on May 31, 2008 under NPDES No. SO3004634. Cresline has been covered under each successive iteration of the ISGP, including the current ISGP ("2025 ISGP"), effective January 1, 2025 and expiring on December 31, 2029, under NPDES No. WAR004634.

Cresline has violated and continues to violate section 307 of the CWA (33 U.S.C. § 1317) and the terms and conditions of the Pretreatment Permit and applicable pretreatment standards, with respect to operations of, and discharges of industrial wastewater to the Chehalis Regional Water Reclamation Facility ("Chehalis POTW") from its PVC pipe manufacturing facility located at or about 223 Maurin Rd., Chehalis, WA 98532 (the "Facility") as described herein. Cresline has violated and continues to violate section 301 of the CWA (33 U.S.C. § 1311) and the terms and conditions of its NPDES permit, with respect to operations of and discharges of

stormwater to Dillenbaugh Creek from the Facility, as described herein. The Facility subject to this notice includes any contiguous or adjacent properties owned or operated by Cresline.

I.     Background

The CWA prohibits the discharge of pollutants to navigable waters unless in compliance with the CWA. 33 U.S.C. § 1311. The CWA regulates three categories of point sources: those that discharge pollutants directly to waters, publicly owned treatment works ("POTWs") that treat municipal sewage or industrial wastewater before discharging to navigable waters, and indirect dischargers that discharge to a POTW. Indirect dischargers are regulated under Section 307 of the CWA and are prohibited from discharging pollutants in violation of any effluent standard or prohibition or pretreatment standard. *See* 33 U.S.C. §§ 1317(d), 1311(a).

The Pretreatment Permit authorizes Cresline to discharge wastewater to the Chehalis POTW, which in turn discharges to the Chehalis River.

II.    Effluent Limitations

Condition S1 of the Pretreatment Permit requires that all discharges must comply with the terms and conditions of the Pretreatment Permit and makes it unlawful for Cresline to discharge pollutants more frequently than, or at a concentration in excess of, the discharge limits established in the Permit.

a.     Five-day Biochemical Oxygen Demand

Condition S1 of the Pretreatment Permit prohibits discharges of five-day biochemical oxygen demand ($BOD_5$) in excess of 300 milligrams per liter (mg/L), measured by the daily maximum, at each of Cresline's outfalls: Outfall 001 and Outfall 002. The previous iteration of the Pretreatment Permit established the same effluent limitation. Cresline has violated this effluent limitation by repeatedly discharging levels of $BOD_5$ in excess of the limit, as identified in Table 1 below, violations which are likely to recur:

**Table 1: $BOD_5$ Effluent Limitation Violations, Outfall 002**

| Date of Violation | $BOD_5$ maximum daily discharge (effluent limit 300 mg/L) |
|---|---|
| February 25, 2022 | **490** mg/L |
| March 25, 2022 | **480** |
| April 29, 2022 | **480** |

| June 17, 2022 | **350** |
|---|---|
| July 29, 2022 | **400** |
| April 26, 2023 | **315** |
| May 31, 2023 | **320** |
| April 25, 2024 | **460** |
| May 22, 2024 | **490** |
| July 25, 2024 | **330** |
| August 29, 2024 | **440** |

Cresline is also in violation of Pretreatment Permit Condition S1, because Cresline discharges pollutants in excess of the local limits in Chehalis Municipal Code ("CMC") § 13.08.310(C)(2)(d), which prohibits indirect dischargers from discharging oxygen-demanding pollutants, including $BOD_5$, at a concentration which causes interference with the Chehalis POTW. Further, Cresline is in violation of local pollutant limits established by the City of Chehalis to protect against pass-through and interference. *See* CMC § 13.08.310(F) (establishing 300 mg/L maximum daily allowable concentration for BOD). These local standards in the CMC constitute pretreatment standards for the purposes of section 307 of the Clean Water Act.

III.    <u>Reporting and Monitoring Requirements</u>

a.  Reporting Violations

Condition S3.F of the Pretreatment Permit requires Cresline to take several actions when it violates or is unable to comply with any permit condition, including immediately taking action to stop, contain, and cleanup any unauthorized discharges, including and as indicated by the discharges in excess of effluent limitations identified in Table 1 of this Notice of Intent to Sue Letter.

Pursuant to condition S3.F.2.b of the Pretreatment Permit, when Cresline violates a Permit discharge limit, it must report the violation by telephone to Ecology within 24 hours from the time that Cresline becomes aware of the violation. Pretreatment Permit Condition S3.F.2.c requires Cresline to provide a written submission within five days of becoming aware of any occurrence of noncompliance specified in condition S3.F.2.a or S3.F.2.b, including violations of the maximum discharge limits for $BOD_5$. Cresline is in violation of Condition S3.F.2.b and c because Cresline has not contacted Ecology by telephone within 24 hours or submitted a written report within five days of becoming aware of each violation identified in Table 1 of this Notice of Intent to Sue Letter. Furthermore, Cresline has violated Condition S3.F by failing to take action and immediately stop, contain, and cleanup these unauthorized discharges.

b.  Failure to Timely Submit Discharge Monitoring Reports

Condition S3.A of the Pretreatment Permit requires Cresline to use a designated online portal to submit discharge monitoring reports ("DMRs") to Ecology. Condition S2.A of the Pretreatment Permit requires Cresline to analyze stormwater samples collected monthly for BOD$_5$, total suspended solids ("TSS"), oil and grease, and pH, as well as continuous sampling for flow and weekly sampling for temperature. For these parameters that require monthly or more frequent monitoring, a DMR must be completed and submitted to Ecology no later than the 15th day of the following month, per Pretreatment Permit condition S3.A.8.a. Cresline must also submit annual DMRs for each calendar year by January 15th of the following year, as required by Pretreatment Permit condition S3.A.8.b. Cresline is in violation of Condition S3.A.8.a because it has failed to submit a monthly DMR within the time prescribed for the following monitoring periods: January and November 2020; January, April, October, November, and December 2021; January, February and March 2022; October 2023; and January, February, March, April, May, June, September, and October 2024. Additionally, Cresline has failed to submit an annual DMR within the prescribed time period, in violation of Pretreatment Permit Condition S3.A.8.b, for the following calendar years: 2020, 2021, 2022, 2023, and 2024.

c.   Failure to Analyze Annual Samples

Condition S2.A of the current Pretreatment Permit requires Cresline to analyze its wastewater discharge a minimum of once per year for certain heavy metals, including arsenic, cadmium, chromium, copper, cyanide, lead, mercury, nickel, selenium, silver, and zinc, as well as bis(2-ethylhexyl)phthalate and vinyl chloride. The previous iteration of the Pretreatment Permit, effective June 1, 2016 through May 31, 2021 required Cresline to sample annually at Outfall 002 for copper, cyanide, lead, mercury, bis(2-ethylhexyl)phthalate, and vinyl chloride. Cresline has violated this condition by failing to annually analyze its wastewater discharges for the above-listed parameters for the following calendar years: 2020, 2021, 2022, 2023, and 2024.

IV.   Operation and Maintenance

Condition S4 of the Permit requires Cresline, at all times, to properly operate and maintain all facilities or systems of treatment and control which are installed to achieve compliance with the terms and conditions of the Permit. *See also* WAC § 173-216-110(4) ("The permittee shall at all times be responsible for the proper operation and maintenance of any facilities or systems of control installed by the permittee to achieve compliance with the terms and conditions of the permit."). Cresline is in violation of condition S4 of the Permit because Cresline has not properly operated its facilities to achieve compliance with the discharge limits, as demonstrated by exceedances identified in Table 1 of this Notice of Intent to Sue Letter. These violations have been chronic over the last five years and occurred during at least each month identified in Table 1 of this Notice of Intent to Sue Letter, and each month during which Cresline failed to submit a monthly DMR, as summarized in section III.b of this letter, and any preceding period during which Cresline should have maintained its facilities and/or trained its employees but failed to do so.

V.   Slug Discharge Control Plan

A slug discharge is "any discharge of a non-routine, episodic nature…[t]his may include any pollutant released at a flow rate that may cause interference or pass through with the POTW or in any way violate the permit conditions or the POTW's regulations and local limits." Fact Sheet for Cresline Northwest LLC State Waste Permit ST 6076 at 26. Cresline is required to develop, update as needed, and maintain on site a Slug Discharge Control Plan. *See* Pretreatment Permit Condition S10.A. Cresline has failed to update its Slug Discharge Control Plan as needed to prevent adverse impacts of such unauthorized discharges, including but not limited to the effluent limitation violations described in Table 1 of this Notice of Intent to Sue Letter, and is therefore in violation of Pretreatment Permit Condition S10. CWA regulations also require certain permittees to develop and implement a Slug Discharge Control Plan, *see* 40 C.F.R. §§ 403.8(f)(1)(iii)(B)(6) and (f)(2)(vi), and Cresline's failure to maintain and implement an adequate Slug Discharge Control Plan constitutes a violation of these federal pretreatment standards, as well.

CMC § 18.08.310(N) also provides slug discharge plan requirements for dischargers to POTWs. CMC § 18.08.310(N)(2) requires Cresline to notify the public works director immediately upon the occurrence of a slug load, and shall include in its notification the location of the discharge, the date and time thereof, the type of waste, the concentration and volume, and the corrective actions taken and planned. Cresline is required to give written notification of the same to the public works director within seven days following the discharge. Cresline violated this provision of the Chehalis Municipal Code each and every time it discharged a slug load to the Chehalis POTW without notifying the public works director, including but not limited to the numeric effluent limitation violations described in Table 1 of this Notice of Intent to Sue letter.

VI.    Prohibited Discharges

Condition S5.B.3 of the Pretreatment Permit prohibits Cresline from discharging any pollutant at a concentration that will cause pass-through in relation to the Chehalis POTW. The federal pretreatment standards also proscribe Cresline from causing pass-through at a POTW. *See* 40 C.F.R. § 403.5. Pass-through is defined as "a discharge which exits the POTW into waters of the State in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the POTW's NPDES permit…or which is a cause of a violation of State water quality standards." Fact Sheet for Cresline Northwest LLC State Waste Permit ST 6076 at 25; *see also* 40 C.F.R. § 403.3(p).

The state water quality standards for human health criteria for bis(2-ethylhexyl)phthalate are found at WAC § 173-201A-240(5), and establish limits of 0.045 µg/L for water and organism consumption and 0.046 µg/L for organism consumption only. Cresline's discharges to the Chehalis POTW have violated the prohibition against pass-through each and every time it has discharged wastewater containing bis(2-ethylhexyl)phthalate in excess of 0.045 µg/L to the POTW. Such discharges have occurred every day in the last five years. Cresline has records and/or superior knowledge of the precise concentrations of these discharges. The Chehalis POTW is not designed to and is not effective in removing pollutants like bis(2-ethylhexyl)phthalate. For example, a 2017 Chehalis POTW effluent sample contained 18 µg/L of bis(2-ethylhexyl)phthalate, a 2019 sample reported 2.6 µg/L of bis(2-ethylhexyl)phthalate, and a 2018 sample showed levels as high as 32 µg/L, with an average daily discharge of 13.1975 µg/L.

Cresline's discharges alone or in conjunction with a discharge or discharges from other sources cause the high levels of bis(2-ethylhexyl)phthalate in the Chehalis POTW's effluent that cause or contribute to violations of state water quality standards, and Cresline is thus in violation of the Pretreatment Permit and the associated pretreatment standards identified above. These violations are ongoing, as Cresline continues to discharge elevated concentrations of bis(2-ethylhexyl)phthalate and has failed to implement effective treatment or controls for this pollutant.

VII.    Requirement to Apply AKART

RCW 90.48.010 requires Cresline to apply all known and reasonable methods of prevention, control and treatment ("AKART") to all discharges of wastes and contaminants prior to entry into waters of the state. *See also* WAC §§ 173-200-030(2)(c)(ii), 173-201A-240(5)(b) ("Dischargers have the obligation to reduce toxics in discharges through the use of AKART."), 173-216-030(1), 173-216-110(1)(a). The CMC similarly requires all users of the Chehalis POTW to apply AKART to their discharges. *See* CMC § 13.08.010. Cresline has been and continues to be in violation of these requirements every day in the last five years because it has failed to apply AKART as shown by its repeated effluent limit exceedances and its lack of treatment technology appropriate for and capable of adequately removing bis(2-ethylhexyl)phthalate. Cresline's current filtration system is inadequate for the purposes of filtering out and removing from wastewater bis(2-ethylhexyl)phthalate, a pollutant which the EPA has classified as a probable human carcinogen. More advanced pollution controls designed to reduce bis(2-ethylhexyl)phthalate are needed to satisfy AKART requirements.

VIII.    ISGP Violations

a.    Failure to Collect and Analyze Quarterly Samples

Conditions S5.A.1 and 2 of the ISGP require Cresline to collect and analyze stormwater samples collected quarterly for turbidity, pH, total copper, and total zinc.

Cresline violated these conditions by failing to analyze stormwater samples, including as described in Table 2 below:

Table 2: Parameters Not Analyzed

| Monitoring Period | Parameters Not Analyzed |
|---|---|
| 3rd Quarter 2021 | Turbidity, pH, copper, zinc |
| 4th Quarter 2021 | Turbidity, pH, copper, zinc |
| 3rd Quarter 2024 | Turbidity, pH, copper, zinc |

b.    Failure to Timely Submit Discharge Monitoring Reports

Condition S9.B of the ISGP requires Cresline to use DMR forms provided or approved by Ecology to summarize, report and submit monitoring data to Ecology. For each monitoring period (calendar quarter) a DMR must be completed and submitted to Ecology not later than 45 days after the end of the monitoring period. Cresline has violated these conditions by failing to

submit a DMR within the time prescribed for the third and fourth quarters of 2021; the second and fourth quarters of 2022; the second quarter of 2023; and the first and second quarters of 2024.

        c.   Violations of the Annual Report Requirements

        Condition S9.C of the ISGP requires Cresline to submit an accurate and complete annual report to Ecology no later than May 15 of each year. Specific information to be included in the annual report is identification of the conditions triggering the need for corrective action, description of the stormwater problem and identification of dates discovered, summary of any Level 1, 2, or 3 corrective actions completed during the previous calendar year, including the dates corrective actions were completed, and description of the status of any Level 2 or 3 corrective actions triggered during the previous calendar year, including identification of the date Cresline expects to complete any outstanding corrective actions. Cresline has violated this requirement because it has failed to timely submit an annual report for calendar years 2019, 2020, 2021, 2022, and 2023.

        IX.    Request for Stormwater Pollution Prevention Plan

        Pursuant to Condition S9.F of the ISGP, Waterkeeper hereby requests that Cresline provide a copy of, or access to, its SWPPP, complete with all incorporated plans, monitoring reports, checklists, and training and inspection logs. The copy of the SWPPP and any other communications about this request should be directed to the undersigned at the letterhead address.

        Should Cresline fail to provide the requested complete copy of, or access to, its SWPPP as required by Condition S9.F of the ISGP, it will be in violation of that condition, which violation shall also be subject to this Notice of Intent to Sue and any ensuing lawsuit.

        X.    Conclusion

        The above-described violations reflect those indicated by the information currently available to Waterkeeper. These violations are ongoing. Waterkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

        Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $68,445 per violation per day. *See* 40 C.F.R. § 19.4.  In addition to civil penalties, Waterkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Further, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Waterkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Cresline under Section 505(a) of the Clean Water Act for violations.

During the 60-day notice period, we would be willing to discuss effective remedies for the violations addressed in this letter and settlement terms.  If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within 10 days of receiving this notice so that a meeting can be arranged and so that negotiations may be completed promptly.  We do not intend to delay the filing of a complaint if discussions are continuing when the notice period ends.

Sincerely,

Smith & Lowney, PLLC

By:      */s/Evelyn Mailander*
         Evelyn Mailander
         Claire Tonry

cc:      Lee Zeldin, Administrator, U.S. EPA
         Dan Opalski, Region 10 Administrator, U.S. EPA
         Casey Sixkiller, Director, Washington Department of Ecology
         CT Corporation System, Registered Agent (711 Capitol Way S, Suite 204, Olympia, WA 98501)

Notice of Intent to Sue - 8