HON. TIFFANY M. CARTWRIGHT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| TWIN HARBORS WATERKEEPER,<br><br>Plaintiff,<br>v.<br><br>CRESLINE-NORTHWEST, LLC,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) | No. 3:25-cv-05361-TMC<br><br>CONSENT DECREE |

## I. STIPULATIONS

Plaintiff Twin Harbors Waterkeeper issued a notice of intent to sue to Cresline-Northwest, LLC ("Cresline-NW") dated February 19, 2025, and a supplemental notice dated October 3, 2025 (the "sixty-day notices"). Twin Harbors Waterkeeper filed a complaint on April 28, 2025 (Dkt. 1), a First Amended Complaint on May 15, 2025 (Dkt. 6), and a Second Amended Complaint on December 11, 2025 (Dkt. 15) against defendant Cresline-NW, alleging violations of the Clean Water Act, 33 U.S.C. § 1251, *et seq*., as amended ("CWA"), relating to discharges of stormwater, wastewater, and other pollutants from Cresline-NW's PVC pipe production and distribution facility at or about 223 Maurin Road, Chehalis, WA 98532 (the "Facility") to Dillenbaugh Creek and to

the Chehalis Regional Water Reclamation Facility ("CRWRF"), and seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs (collectively, the "complaints").

Cresline-NW contends that Twin Harbors Waterkeeper's claims are without merit, denies Twin Harbors Waterkeeper's allegations of violations, denies liability for all claims alleged by Twin Harbors Waterkeeper, and denies that Twin Harbors Waterkeeper is entitled to any relief whatsoever.

Solely for the purpose of this Consent Decree, Cresline-NW and Twin Harbors Waterkeeper (collectively, the "Parties") stipulate that the Court has jurisdiction over the Parties and the subject matter of this action under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).

The Parties agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

The Parties stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding Twin Harbors Waterkeeper's claims or allegations set forth in its complaints and its sixty-day notices.

DATED this 11th day of August, 2026.

CRESLINE-NORTHWEST, LLC

By [signature]
Richard Schroeder
Manager

TWIN HARBORS WATERKEEPER

By [signature]
Eleanor Hines
Executive Director

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the Parties' Joint Motion for Entry of Consent

Decree and the foregoing Stipulations of the Parties. Having considered the Stipulations and the promises set forth below, the Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. This Court has jurisdiction over the Parties and subject matter of this action.

2. Each signatory for the Parties certifies for that party that they are authorized to enter into the agreement set forth herein and to legally bind the party or parties, their successors in interest, and assigns of the Parties.

3. This Consent Decree applies to and binds the Parties and their successors and assigns.

4. This Consent Decree and any injunctive relief ordered within applies solely to Cresline-NW's operation, oversight, or both of the Facility.

5. This Consent Decree is a full and complete settlement and release of all the claims in the complaints, the sixty-day notices, and all other claims known or unknown existing as of the date of entry of the Consent Decree that could be asserted under the CWA, 33 U.S.C. §§ 1251 *et seq*., as amended, arising from operation or oversight of the Facility. Upon termination of this Consent Decree, these claims are released and dismissed with prejudice. Cresline-NW's payment of attorney's fees and litigation costs set forth in paragraph 9 of the Consent Decree will be in full and complete satisfaction of any claims Twin Harbors Waterkeeper and Smith & Lowney, PLLC have or may have, either legal or equitable, known or unknown, and of any kind or nature whatsoever, for fees, expenses, and costs incurred in the Litigation. Enforcement of this Consent Decree is Twin Harbors Waterkeeper's exclusive remedy for any violation of its terms. Twin Harbors Waterkeeper, including its officers, directors, or agents, will not support by financial assistance, personnel time, or otherwise any

lawsuits or potential lawsuits against Cresline-NW, or initiate any lawsuits or potential lawsuits against Cresline-NW, including Cresline-NW's officers, directors, agents, and employees, alleging violations of the CWA at the Facility during the term of this Consent Decree.

6. This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by Twin Harbors Waterkeeper in this case or of any fact or conclusion of law related to those allegations, nor evidence of any wrongdoing or misconduct on the part of Cresline-NW or its contractors, customers, or other third parties. Cresline-NW agrees to the terms and conditions identified below in paragraphs 7-9 in full and complete satisfaction of all the claims covered by this Consent Decree:

7. Upon entry of the Consent Decree, Cresline-NW will implement the following terms and conditions during the term of this Consent Decree:

a. Cresline-NW will adhere to the requirements of the CWA, as applicable, at the Facility, including the terms and conditions of the Industrial Stormwater General Permit No. WAR004634 (the "ISGP") and Permit No. ST0006076 (the "Pretreatment Permit") and any successor or modified versions of these NPDES permits, including implementing all best management practices ("BMPs") provided in the Facility's Stormwater Pollution Prevention Plan ("SWPPP").

b. Cresline-NW will, on a quarterly basis, electronically forward to Twin Harbors Waterkeeper pursuant to the notice provisions in paragraph 18 below copies of all submissions to the Washington Department of Ecology

("Ecology") related to the ISGP and Pretreatment Permit for the Facility for the term of the Consent Decree.

c. **Wastewater monitoring:** Within thirty (30) days of entry of the Consent Decree, and for the duration of the Consent Decree, Cresline-NW will conduct quarterly monitoring of its wastewater for bis(2-ethylhexyl) phthalate ("DEHP") and organotin compounds (dibutyltin and monobutyltin). Cresline-NW will share the results of such monitoring electronically and quarterly with Ecology, Twin Harbors Waterkeeper, and the CRWRF. Cresline-NW will comply with any future Pretreatment Permit conditions and orders from Ecology or the CRWRF specific to these pollutants.

d. **Corrective action plan:** Should regular monitoring indicate that Cresline-NW has exceeded any of the numeric effluent limits contained in its Pretreatment Permit at any point during the term of the Consent Decree, Cresline-NW will prepare an additional corrective action plan within sixty (60) days of learning of the numeric effluent limit violation. Within seven (7) days of completing a preliminary corrective action plan, Cresline-NW will provide a draft of the corrective action plan to Twin Harbors Waterkeeper for its expert's review and comment. Twin Harbors Waterkeeper will provide such comments, if any, within thirty (30) days of receipt of the draft corrective action plan. Within sixty (60) days of receipt of Twin Harbors Waterkeeper's comments on the draft corrective action

plan, Cresline-NW will finalize the corrective action plan and either incorporate Twin Harbors Waterkeeper's comments into the final corrective action plan, or, for any comments that Cresline-NW rejects, provide a written explanation to Twin Harbors Waterkeeper as to why the comment is either technically infeasible or economically unreasonable using the cost tests in Ecology's Water Quality Program Permit Writer's Manual. Within one-hundred and twenty (120) days of receipt of Twin Harbors Waterkeeper's comments on the draft corrective action plan, Cresline-NW will implement the final corrective action plan. If Ecology's approval of Cresline-NW's corrective action plan is necessary prior to implementation, Cresline-NW's deadline for implementation shall be extended pursuant to paragraph 11(f). To fund Twin Harbors Waterkeeper's review and comment on the corrective action plan if the need for such plan is triggered, within ninety (90) days of discovering the numeric effluent limit violation, Cresline-NW will pay $3,500 to Twin Harbors Waterkeeper via check mailed and made payable to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Claire Tonry.

e. **Wastewater BMPs:** No later than the date of entry of the Consent Decree, unless otherwise specified, Cresline-NW will continue to implement the following wastewater BMPs:

i. Re-route all wastewater associated with "purge" to the wastewater treatment system. Cresline-NW will not dispose of process

wastewater on the ground of the Facility or in the stormwater system.

ii. Train staff regarding disposal of purge water in the wastewater system.

iii. Optimize wastewater chemicals to reduce copper levels in Cresline-NW's wastewater discharges.

iv. Test optimized wastewater chemicals to ensure copper levels are below the limits specified in Cresline-NW's Pretreatment Permit.

v. Re-route piping in the wastewater system to ensure that BOD samples are representative of discharges and install a light system in the wastewater treatment system to prevent short-circuiting and provide sufficient time for treatment before discharge.

vi. Increase coordination with the CRWRF to ensure that Cresline-NW's discharges cause no interference with the CRWRF's operations.

f. **Pond remediation:** No later than September 30, 2026, Cresline-NW will take the following actions to remediate its stormwater retention ponds at the Facility:

i. Drain existing water from the two retention ponds, as necessary, to remove built up sediment and thin existing vegetation;

ii. Install matting and/or clean soil to stabilize the side slopes of the ponds, as needed;

iii. Re-plant or otherwise encourage growth and establishment of more

rushes, sedges, and other beneficial wetland vegetation;

iv. Once the ponds are re-filled with stormwater, monitor stormwater discharges on at least a quarterly basis for dibutyltin and monobutyltin, as well as the other parameters required by the ISGP and any future iterations thereof. Cresline-NW will share the results of such monitoring electronically and quarterly with Ecology and Twin Harbors Waterkeeper;

v. Implement the steps identified in Cresline-NW's Stormwater Pollution Prevention Plan ("SWPPP") (as will be revised per paragraph 7(h), below) to prevent future heat stabilizer spills; and

vi. Maintain the stormwater retention ponds, including by periodically removing accumulated sediments, thinning overgrown cattails and other vegetation, and removing excess organic matter contributing to algal blooms, stratification, and swings in pH and dissolved oxygen, as needed.

g. **Stormwater BMP improvements:** No later than the date of entry of the Consent Decree, unless otherwise specified, Cresline-NW will implement the following stormwater BMPs:

i. Within ninety (90) days of entry of the Consent Decree, prepare an Operations & Maintenance manual for the stormwater retention ponds at the Facility, and consistently implement the requirements of the manual.

ii. Immediately clean up all spills of PVC resin, calcium carbonate, or other material transferred between train cars, Cresline-NW's storage silos, and the Cresline-NW Facility, as set forth in Cresline-NW's SWPPP.

iii. Implement a robust protocol for spill cleanup and train all employees, including seasonal and contract employees, accordingly, as set forth in Cresline-NW's SWPPP.

iv. Keep all dumpsters under cover or fit with a storm-resistant lid that remains closed at all times when not in use.

v. Ensure that all dumpsters on site do not leak. If a dumpster is leaking, Cresline-NW will immediately cease using the dumpster until such time as it can be repaired or replaced.

vi. By September 30, 2026, install and maintain catch basin inserts in all catch basins. Catch basins nine and ten, adjacent to the storage silos, will have an absorbent media; all other catch basin inserts may be made of woven material. Cresline-NW will promptly upgrade the woven catch basin inserts in the yard to inserts with appropriate media if quarterly discharge monitoring shows dibutyltin or monobutyltin in Cresline-NW's stormwater. Cresline-NW shall inspect catch basin inserts monthly and replace the inserts whenever a monthly inspection reveals visible debris, or more often if the manufacturer's specifications so recommend. Catch basin insert

replacement shall be performed on a dry day, to the extent possible. When replacing catch basin inserts, Cresline-NW will sweep or vacuum accumulated fines from around the rim of the catch basins to remove such fines and prevent them from falling into the catch basins, to the extent possible. Cresline-NW will document catch basin insert maintenance in its existing monthly inspection report forms on an ongoing basis and will share such forms with Twin Harbors Waterkeeper electronically and on a quarterly basis for the term of the Consent Decree.

vii. Implement standard operating procedures for supervision and oversight to ensure that all required discharge monitoring reports under Cresline-NW's permits are timely submitted to Ecology.

h. **SWPPP improvements:** Within thirty (30) days of entry of the Consent Decree, Cresline-NW will implement the following revisions to its Facility SWPPP:

i. Add all BMPs required by the Consent Decree set forth in the above paragraph 7(g).

ii. Revise the site map to add: (1) the location and extent of all impervious surfaces; (2) any areas of existing or potential soil erosion; (3) the areas where equipment cleaning is conducted; (4) any locations and sources of stormwater run-on; and (5) the areas where industrial activity is conducted.

iii. Update the inventory of industrial materials at Table 2.1 to include loading and unloading of material handled at the Facility, outdoor storage of heat stabilizer and titanium dioxide, on-site waste treatment, storage, and disposal (i.e., disposal of purge), and the propane fueling area.

iv. Add the following good housekeeping procedures to Section 3.1.1 of the SWPPP, Good Housekeeping, including a schedule for their implementation: improved protocols to promptly clean up feedstock materials and waste debris that spill or visibly accumulate on the ground; silos are inspected daily for spills and leaks, which if discovered are promptly addressed; handling equipment for powder material is regularly cleaned as dust and residue accumulate; when saw shavings and residual compounds are disposed of, they are contained and sealed in trash bags before being placed in the dumpster to prevent escape of dust and debris.

v. Update Section 3.1.2, Preventive Maintenance BMPs, to specify a cleaning schedule for equipment that handles powdered materials and to include Cresline-NW's maintenance practices for the stormwater retention ponds, swales, and other stormwater infrastructure on site.

vi. Update Section 3.1.3, Spill Prevention and Emergency Cleanup Plan, to state what is included in spill kits on site and where spill kits are

located; include a spill log; and state that Cresline-NW will block, plug, or cover storm drains that receive runoff from areas where fueling or maintenance occurs, during fueling or vehicle fluid changes in accordance with ISGP Condition S3.B.4.b.i.4.e.

vii. Update Section 3.1.4, Employee Training, to state that all employees whose duties have the potential to impact stormwater quality receive stormwater training annually, rather than just the pollution prevention team. Additionally, update this section to specify that either a trained employee supervises contract work at all times or that contractors/vendors are trained within thirty (30) days of hire, and that new employees are trained within ninety (90) days of hire. Update this section to specify how training is conducted and what the content of the training includes, and include an employee training log with the SWPPP.

viii. Update Section 3.1.6, Illicit Discharges, to specify how purge cooling water will be disposed of so as not to constitute an illicit discharge.

ix. Update Section 4, Sampling Plan, to specify Cresline-NW's procedure for submitting stormwater sampling results to Ecology.

x. Update the SWPPP to include the applicable operational and structural source control BMPs for the following categories from the Stormwater Management Manual for Western Washington:

1) S431: BMPs for Washing and Steam Cleaning Vehicles/Equipment/Building Structures
2) S417: BMPs for Maintenance of Stormwater Drainage Systems and Stormwater Management BMPs
3) S421: BMPs for Parking and Storage of Vehicles and Equipment
4) S425: BMPs for Soil Erosion and Sediment Control at Industrial Sites
5) S409: BMPs for Fueling at Dedicated Stations
6) S426: BMPs for Spills of Oil and Hazardous Substances
7) S414: BMPs for Maintenance and Repair of Vehicles and Equipment
8) S424: BMPs for Roof/Building Drains at Manufacturing and Commercial Buildings
9) S447: BMPs for Roof Vents

8. Payment to Environmentally Beneficial Projects: Within fourteen (14) days of entry of this Consent Decree by the Court and Cresline-NW's receipt of W-9s for all entities from Twin Harbors Waterkeeper, Cresline-NW will pay $595,000 (FIVE HUNDRED AND NINETY-FIVE THOUSAND DOLLARS) to the Grays Harbor Audubon Society, the Wild Fish Conservancy, the Confederated Tribes of the Chehalis Reservation, and the Quinault Indian Nation for projects to benefit water quality in the Chehalis River and Dillenbaugh Creek watersheds, as described in **Exhibits 1**, **2**, **3**, and **4** to this Consent Decree, and divided as

follows: $25,000 to Grays Harbor Audubon Society; $75,000 to Wild Fish Conservancy; $247,500 to the Confederated Tribes of the Chehalis Reservation; and $247,500 to the Quinault Indian Nation. The checks will be made out as follows and payment will include the following reference in a cover letter or on the check: "Consent Decree, Twin Harbors Waterkeeper v. Cresline-Northwest, LLC, W.D. Wash. No. 3:25-cv-05361-TMC":

For Grays Harbor Audubon Society, to the order of Grays Harbor Audubon Society, attn: Janet Strong and delivered to: Grays Harbor Audubon Society, attn: Janet Strong, PO Box 470, Montesano, WA 98563.

For Wild Fish Conservancy, to the order of Wild Fish Conservancy, attn: Jamie Glasgow and delivered to: Wild Fish Conservancy, attn: Jamie Glasgow, PO Box 402, Duvall, WA 98019.

For the Confederated Tribes of the Chehalis Reservation, to the order of Confederated Tribes of the Chehalis Reservation and delivered to: The Confederated Tribes of the Chehalis Reservation, Department of Natural Resources: Attn: Colleen Parrott, PO Box 536, Oakville, WA 98568.

For the Quinault Indian Nation, to the order of Quinault Indian Nation and delivered to: Quinault Indian Nation, Attn: Hannah Curley, Treasurer, PO Box 70, Taholah, WA 98587.

Cresline-NW will send a copy of the checks and cover letters, if any, to Twin Harbors Waterkeeper and its counsel, pursuant to the notice provisions in paragraph 18.

9. Within seven (7) days of entry of this Consent Decree by the Court and Cresline-NW's receipt of a W-9 for Twin Harbors Waterkeeper, Cresline-NW will pay $175,000.00 (ONE HUNDRED AND SEVENTY-FIVE THOUSAND DOLLARS) to Twin Harbors

Waterkeeper to cover Twin Harbors Waterkeeper's litigation fees, expenses, and costs (including reasonable attorneys and expert witness fees) by check payable and mailed to Smith & Lowney, PLLC, 2317 East John St., Seattle, WA 98112, attn: Claire Tonry, in full and complete satisfaction of any claims Twin Harbors Waterkeeper may have against Cresline-NW under the CWA for attorney fees and litigation costs and expenses incurred in this matter. Twin Harbors Waterkeeper's below-signed counsel hereby certifies that the actual costs and fees incurred in pursuing Twin Harbor Waterkeeper's claims against Cresline-NW in this matter meet or exceed $175,000.00.

10. A force majeure event is any event outside the reasonable control of Cresline-NW that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that Cresline-NW timely notifies Twin Harbors Waterkeeper of the event, the steps that Cresline-NW will take to perform the task, the projected time that will be needed to complete the task, and the measures that have been taken or will be taken to prevent or minimize any impacts to wastewater and stormwater effluent quality resulting from delay in completing the task.

11. Cresline-NW will notify Twin Harbors Waterkeeper of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) business days after Cresline-NW becomes aware of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

a. Acts of God such as unusually adverse weather conditions, war, insurrection, or civil disturbance;

b. Earthquakes, landslides, fire, floods;

c. Actions or inactions of third parties over which Cresline-NW has no control;

d. Restraint by court order or order of public authority;

e. Strikes;

f. Any permit or other approval sought by Cresline-NW from a government authority to implement any of the actions required by this Consent Decree where such approval is not granted or is delayed, and where Cresline-NW has timely and in good faith sought the permit or approval;

g. Litigation, arbitration, or mediation that causes delay; and

h. Epidemics and pandemics, including but not limited to viral and/or bacterial.

12. This Court retains jurisdiction over this matter while this Consent Decree remains in force. While this Consent Decree remains in force, this case may be reopened without filing fees so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Consent Decree or to resolve any dispute regarding the terms or conditions of this Consent Decree. In the event of a dispute regarding implementation of, or compliance with, this Consent Decree, the Parties must first attempt to resolve the dispute by meeting to discuss the dispute and any suggested measures for resolving the dispute. Such a meeting will be held as soon

as practical but must be held within thirty (30) days after notice of a request for such a meeting to the other Party and its counsel of record. If no resolution is reached at that meeting or within thirty (30) days of the Notice, either Party may file a motion with this Court to resolve the dispute. The provisions of section 505(d) of the CWA, 33 U.S.C. § 1365(d), regarding awards of costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, will apply to any additional court proceedings necessary to enforce the terms and conditions of this Consent Decree.

13. The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), no consent judgment can be entered in a CWA suit in which the United States is not a party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Attorney General and the Administrator of the U.S. Environmental Protection Agency ("EPA"). Therefore, upon the filing of this Consent Decree by the parties, Twin Harbors Waterkeeper will serve copies of it upon the Administrator of the U.S. EPA and the U.S. Attorney General.

14. This Consent Decree will take effect upon entry by this Court. The Consent Decree terminates two years and six months after the date of entry of this Consent Decree or when all of the specified terms and conditions in paragraphs 7(a)-(h) are complete (the "Termination Date"). The provisions of this Consent Decree, except for Twin Harbors Waterkeeper's release of claims described in paragraphs II(5) and II(9) of this Consent Decree, terminate on the Termination Date.

15. Both Parties have participated in drafting this Consent Decree; provided, however, that nothing contained herein shall be construed as an admission of liability or otherwise, as any form of evidence as to the merit of any issue, theory, or argument, factual or legal.

16. This Consent Decree constitutes the entire agreement between the Parties. There are no other or further agreements, either written or verbal. This Consent Decree may be modified only upon a writing signed by both Parties and the approval of the Court.

17. If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith to cure any objection raised by the Court to entry of this Consent Decree.

18. Notifications required by this Consent Decree must be in writing and via email. For a notice or other communication regarding this Consent Decree to be valid, it must be sent to the receiving Party at the one or more email addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this paragraph.

**If to Twin Harbors Waterkeeper:**

Eleanor Hines
Maya Rommwatt
Twin Harbors Waterkeeper
eleanorh@twinharborswaterkeeper.org
mayar@twinharborswaterkeeper.org

**And to:**

Claire Tonry
Evelyn Mailander
Smith & Lowney PLLC
claire@smithandlowney.com
evelyn@smithandlowney.com

**If to Cresline-NW:**

Richard Schroeder
Theresa Weyer
Marty Puckett

Danny Perez
Cresline-Northwest, LLC
richard@cresline.com
tweyer@cresline.com
mpuckett@cresline.com
dperez@cresline-nw.com

**And to:**

G. Michael Schopmeyer
Kahn, Dees, Donovan & Kahn, LLP
mschopmeyer@kddk.com

Any party identified in the notice provisions above may affect a change in the notice address by providing a notice complying with these provisions to all other parties listed. A notice or other communication regarding this Consent Decree will be effective the day it is transmitted. An email is effective the day it is sent so long as it is sent by 5 pm and on a business day, or else it is effective the following business day.

DATED this 9th day of October, 2026.

HON. TIFFANY M. CARTWRIGHT
UNITED STATES DISTRICT JUDGE

Presented by:

DUNN CARNEY ALLEN HIGGINS & TONGUE, LLP

By ______________________
Joshua D. Stadtler, WSBA #51762
*Attorney for Defendant Cresline-Northwest, LLC*

SMITH & LOWNEY, PLLC

By *s/ Evelyn Mailander*
Claire Tonry, WSBA #44497
Evelyn Mailander, WSBA #62827
*Attorneys for Plaintiff Twin Harbors Waterkeeper*